IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:12-513-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| KENNETH ONEIL TIMMONS ) | |
| _____ ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 3424). Seeking compassionate release, the defendant states that he has serious medical conditions that render him particularly vulnerable if he is reinfected with COVID-19.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is denied.

PROCEDURAL HISTORY

In November 2012, the defendant and 37 others were named in a 137-count Superseding Indictment (SSI) (ECF No. 868) charging them with conspiracy to engage in racketeering activity in violation of 18 U.S.C. § 1961(1) and multiple acts involving state

1

offenses chargeable under South Carolina state law. Count 1 charged that the racketeering activity included murder, distribution and possession with intent to distribute and trafficking in controlled substances (cocaine, cocaine base, marijuana, heroin, and others), and robbery, as well as wire fraud, obstruction of justice, witness tampering, sex trafficking, Hobbs Act robbery, interstate travel in aid of racketeering, and interstate transportation for prostitution, in violation of federal law.

All of the defendants named in the SSI were members of the United Blood Nation also referred to as the Bloods street gang. The remainder of the SSI charged various controlled substance offenses, Hobbs Act robbery, federal firearms offenses, and other serious crimes.

The defendant pleaded guilty pursuant to a written Plea Agreement (ECF No. 1461) to Count 85 of the SSI, which charged him with Hobbs Act robbery and aiding and abetting in violation of 18 U.S.C. §§ 1951(a) and 2. He also pleaded guilty to Count 125 which charged him with possessing, using, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. The Plea Agreement, pursuant to Fed. R. Crim. P. Rule 11(C)(1)(c), provided that the appropriate disposition of the case was a total custodial sentence of not more than 18 years, and an appropriate term of supervised release.

The Presentence Report (PSR) (ECF No. 2317) prepared by the United States Probation Office determined that the defendant's total offense level of 24 and criminal history category of III produced a guideline range of 63 to 78 months on Count 85. The

mandatory minimum term of imprisonment of 120 months on Count 125 was to be imposed consecutively pursuant to USSG § 2K2.4 for a total of 183 months.

After an unsuccessful motion to withdraw his guilty plea, the defendant was sentenced in March 2014 to a sentence of 190 months, consisting of 70 months on Count 85 and 120 months on Count 125, to run consecutively, and a term of supervised release of 5 years.

The defendant did not appeal his conviction or sentence. He did, however, file a number of unsuccessful motions with this court including successive motions under 28 U.S.C. § 2255, and a motion in light of USSG Amendment 782.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the

court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court may reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, __ F.4th __, 2021 WL 4888393, at *3 (4th Cir. Oct. 20, 2021).

Here, the government acknowledges that the defendant submitted a request to the Warden and it was denied. As it appears to this court that the defendant has now fully exhausted his administrative remedies, the court will proceed to review the matter on the merits.

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

In his motion (ECF No. 3424),[1] the defendant asserts that he suffers from lupus, scleroderma, Raynauds, asthma, edema, vasculitis, gastro-esophageal reflux disease, major

---

[1] The defendant's first motion for compassionate release was dismissed without prejudice because the defendant had not exhausted his administrative remedies.

7

depressive disorder, and obesity.

The government hastens to respond, that the defendant fails to mention that he tested positive for COVID-19 on June 3, 2020.[2] He has fully recovered and since tested negative. The government argues that the defendant's earlier diagnosis, coupled with his current negative test, disproves his contention that his release is appropriate under the circumstances. To date, the defendant has gone six months since he tested positive without experiencing any more symptoms. The government thus argues that the defendant is not at an increased risk—and likely no risk whatsoever—of experiencing significant health issues as a result of the COVID-19 pandemic due to his medical conditions.

In response, the defendant contends that his medical conditions place him "at risk of death if reinfected with COVID-19." (ECF No. 3469 at 4). However, he cites no support for this contention.

While the government's position has some merit, it cannot be denied that the conditions of obesity and asthma have been identified by the Centers for Disease Control (CDC) as physical infirmities that may make an individual more susceptible to long term harm from COVID-19. Accordingly, the court will assume that the defendant has demonstrated an extraordinary and compelling reason for his release based upon his medical condition.

---

[2] In a sealed attachment to its memorandum in opposition (ECF No. 3441), the government has provided 275 pages of the defendant's medical records from the BOP.

The court's inquiry does not end here however. Under Fourth Circuit guidance, this court must now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense*. It cannot be disputed that the defendant participated in very serious criminal offenses. As a member of a violent street gang, he interfered with interstate commerce by threats and intimidation and possessed a firearm in connection with a violent crime. He was involved in a drug-related robbery in which he shot a rival drug dealer with a shot gun. The purpose of the robbery was to steal cocaine which the defendant intended to split with others involved in the robbery. (*See* ECF No. 2317 at ¶ 46).

Additionally, the defendant and others also kidnaped a victim during the robbery. (*Id*. at ¶ 52). Thus, this court determines the defendant's actions to be most serious crimes, deserving of a significant prison sentence.

2. *History and Characteristics of the Defendant*. The defendant was a self-professed member of not one, but two violent street gangs. He was first a member of the Folk Nation gang and then switched over to the Bloods street gang. At the time of his sentencing, the defendant had been convicted in 2001 of theft by receiving stolen property and fleeing to elude police, simple battery in 2002, obstructing an officer in 2003, willful obstruction of law

9

enforcement officers in 2005, domestic violence and criminal trespass in 2006, possession of controlled substance in 2010, receiving stolen goods in 2011, shoplifting in 2011, and multiple traffic offenses.

*Post-Sentencing Conduct*

While incarcerated, the defendant began working on his GED and has taken a total of 43 classes. While some of these classes (plumbing apprenticeship, real estate investing, work readiness) appear to be vocational in nature, other classes are more oriented towards behavior modification (leadership development, rational thinking, victim impact), and others appear to have minimal rehabilitative value (the music industry, readiness for change).

In his reply he attaches a copy of a disciplinary report showing that the defendant has not had any disciplinary infractions while incarcerated.

The defendant is currently 39 years old. He has served more than 60 percent of his sentence and is presently incarcerated at the Federal Correctional Institution Butner Low in North Carolina. His scheduled release date is June 3, 2026.

The defendant has never been married, but has had an "off and on" relationship with a female since 2010. He has fathered 5 children from 3 separate relationships. When arrested, he had been residing with his mother and stepfather and plans to return to live with or near them if released.

3. *Seriousness of the Crimes*. As noted herein, the court regards the defendant's crimes as very serious and are fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. The defendant was a member of two violent street gangs, participated in a Hobbs Act robbery during which he attempted to rob another drug dealer, and then shot the drug dealer. To release the defendant now would, in this court's view, present a clear danger to the public.

7. *Need to Avoid Unwarranted Disparity*. This court has carefully perused the sentences imposed on all of the 38 defendants in this case and, although the situations involved in some of the related sentencings were quite different, the court determines that the sentence imposed on defendant Timmons, was not in any way disproportionate to the sentence imposed on similarly situated defendants.

CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated extraordinary and compelling reasons for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied.[3] (ECF No. 3424).

IT IS SO ORDERED.

October 27, 2021
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[3] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")