IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:12-513-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| KENNETH ONEAL TIMMONS | ) | |
| _____ | ) | |

This matter is before the court on the defendant's second *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 3564). In his first motion,[2] the defendant sought compassionate release based upon his medical conditions. In his present motion, the defendant contends that due to changes in the sentencing laws announced by the Fourth Circuit Court of Appeals, his sentence today would be substantially different from the one imposed at the time of his original sentencing.

The government has responded in opposition, arguing that the defendant's claim fails under recent case law. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

[2] In an order filed October 27, 2021 (ECF No. 3503), this court denied the defendant's first motion for compassionate release finding that even assuming the defendant had demonstrated extraordinary and compelling reasons for his release due to his medical conditions, his release was not appropriate in light of this court's individualized assessment of the § 3553(a) factors.

1

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

> is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

3

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The defendant attests that he submitted a request for a reduction in his sentence to the Warden on May 25, 2022 and such request was denied on July 14, 2022. Thus, the court will proceed to review the matter on the merits.

PROCEDURAL BACKGROUND

In November 2012, the defendant and 37 others were named in a 137-count Superseding Indictment (SSI) (ECF No. 868) charging them with conspiracy to engage in racketeering activity in violation of 18 U.S.C. § 1961(1) and multiple acts involving state offenses chargeable under South Carolina state law. Count 1 charged that the racketeering activity included murder, distribution and possession with intent to distribute and trafficking in controlled substances (cocaine, cocaine base, marijuana, heroin, and others), and robbery, as well as wire fraud, obstruction of justice, witness tampering, sex trafficking, Hobbs Act robbery, interstate travel in aid of racketeering, and interstate transportation for prostitution, in violation of federal law.

All of the defendants named in the SSI were members of the United Blood Nation also referred to as the Bloods street gang. The remainder of the SSI charged various controlled substance offenses, Hobbs Act robbery, federal firearms offenses, and other serious crimes.

The defendant pleaded guilty pursuant to a written Amended Plea Agreement (ECF No. 1508) to Count 85 of the SSI, which charged him with Hobbs Act robbery and aiding and abetting in violation of 18 U.S.C. §§ 1951(a) and 2. He also pleaded guilty to Count 125 which charged him with possessing, using, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. The Amended Plea Agreement, pursuant to Fed. R. Crim. P. Rule 11(C)(1)(c), provided that the appropriate disposition of the case was a total custodial sentence of not more than 18 years, and an appropriate term of supervised release.

The Presentence Report (PSR) (ECF No. 2317) prepared by the United States Probation Office PSR determined that the defendant's total offense level of 24 and criminal history category of III produced a guideline range of 63 to 78 months on Count 85. The mandatory minimum term of imprisonment of 120 months on Count 125 was to be imposed consecutively pursuant to USSG § 2K2.4 for a total of 183 months.

After an unsuccessful motion to withdraw his guilty plea, the defendant was sentenced in March 2014 to a sentence of 190 months, consisting of 70 months on Count 85 and 120 months on Count 125, to run consecutively, and a term of supervised release of 5 years.

The defendant did not appeal his conviction or sentence. He did, however, file a number of unsuccessful motions with this court including successive motions under 28 U.S.C. § 2255, and a motion in light of USSG Amendment 782.

The defendant is currently 41 years and is located at the Federal Correctional Institution at Butner, North Carolina. His anticipated release date is June 3, 2026.

## DISCUSSION

### I. *Intervening Change in Sentencing Laws*

The defendant first asserts that he was charged with *attempted* Hobbs Act robbery in violation of 18 U.S.C. § 1962(d). He then contends that as a result of the decision of the United State Court of Appeals for the Fourth Circuit in *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2016), that his attempted Hobbs Act robbery conviction no longer qualifies as a crime of violence so as to support an enhanced sentence for the second count of conviction, Count 125. The defendant also points to a number of vocational and educational courses, totaling 48 in number, which he says justifies his immediate release from custody.

In its opposition memorandum, the government points out that under *United States v. Ferguson*, 55 Fed.4th 262 (4th Cir. 2022), a claim of Guideline error fails as a matter of law to qualify as an extraordinary and compelling reason for compassionate release.

In his reply brief, the defendant correctly points out that he is not alleging a Guidelines calculations error (at the time of his original sentencing) in this case. Rather, he is suggesting that there has been a substantial change in the law, which means that his sentence today would be vastly different from the sentence imposed back in 2014.

For the reasons which follow, the court agrees with the government that the motion should be denied, but for a different reason.

7

While it is true that *Taylor* held that attempted Hobbs Act robbery is not categorically a crime of violence, another Fourth Circuit decision decided shortly before *Taylor*, *United States v. Mathias*, 932 F.3d 42 (4th Cir. 2019), squarely held that Hobbs Act robbery itself remains a crime of violence.

Seeking to avail himself of the Taylor decision, the defendant contends that he was convicted of "attempted" Hobbs Act robbery rather than the substantive crime of Hobbs Act robbery itself.

In the Superseding Indictment against the defendant, Count 85 charges as follows:

THE GRAND JURY FURTHER CHARGES:

That on or about June 26, 2012, in the District of South Carolina, the Defendants, NICHOLAS JASON WRIGHT, a/k/a Tater Head, STEWART JAMAUL STROMAN, a/k/a Stew, CALVIN JAMES HALL, a/k/a Kebo and KENNETH ONEAL TIMMONS, a/kla Keno, a/k/a Kino, as principals, aiders and abettors and as co-participants in jointly undertaken criminal activity, knowingly and unlawfully did obstruct, delay, affect, and attempt to affect interstate commerce and the movement of articles and commodities in such commerce by robbery, in that the Defendants used at least one firearm to unlawfully take property consisting of money and controlled substances belonging to, and from an individual and individuals engaged in illegal drug trafficking, from the persons and presence of said drug trafficker(s) against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons;

In violation of Title 18, United States Code, Sections 1951 (a) and 2.

(ECG No. 868 at 61).

The fact that there is a reference to "attempt" in the Superseding Indictment is of no significance. The Superseding Indictment merely tracks the exact language of the Hobbs Act

8

statute and it is well-established that allegations in the Indictment may be "charged in the conjunctive and proved in the disjunctive."

Then, the Amended Plea Agreement added a degree of confusion by indicating that the defendant would plead guilty to Count 85[3] which charged "attempted Hobbs Act robbery." (ECF No. 1508).

At his guilty plea hearing on May 29, 2013, the government stated the factual basis for the defendant's plea:

> Your Honor, with respect to Mr. Timmons, he is offering to plead guilty to an attempted Hobbs Act robbery and a 924(c) discharge, or possession, use, and carry of a firearm in furtherance of a crime of violence or a drug trafficking offense. This charge is related to an incident that occurred on or about June 26 of 2012 wherein Mr. Timmons, Nicholas Wright, and other co-conspirators, Bloods members, or Bloods associates, traveled to Greenville, South Carolina, for the purpose of robbing the victim, Terrell Harley, of drugs -- cocaine, specifically --and cash. According to cooperators and witnesses, the defendants, Mr. Wright, Mr. Timmons, and their co-conspirators went to the location where they believed Mr. Harley to be. They made contact with Mr. Harley and physically restrained him by holding him at gunpoint while demanding that he give up money and drugs. When Mr. Harley refused to give up the money and drugs, Mr. Timmons held a gun on him and eventually shot Mr. Harley in the gut in an effort to get Mr. Harley to give up the drugs and money that he had in his possession. This gunshot wound caused life-threatening injuries such that Mr. Harley had to be transported to Greenville Memorial Hospital and received treatment for those wounds. According to cooperators Wright, Timmons, and the other coconspirators were successful in robbing Mr. Harley of several ounces of cocaine and cash. The co-conspirators returned to Columbia where they split the proceeds of the

---

[3] It should be noted at this point that the executed Amended Plea Agreement was riddled with inaccuracies and strike-overs. As can be seen from the document itself, the first version referred to a guilty plea to Count 1, and this was stricken over and Count 85 was added in its place and the change was initialed. Later in the Plea Agreement, there was an incorrect reference to "conspiracy," which, likewise, was stricken over and replaced with "robbery."

> robbery, cocaine, and cash, with other individuals who had provided firearms and other assistance. Again, Your Honor, the evidence at trial, we would offer witnesses' testimony and cooperator testimony to show that Mr. Timmons fired a weapon during and in relation to and in furtherance of this robbery, and that the object of the robbery or the goal was to rob a drug dealer of cocaine, which they attempted and actually did. That in and of itself affects interstate commerce. That would be the evidence that we would offer against Mr. Timmons on the two counts to which he is offering to plead guilty.

Guilty Plea Transcript, at 53–55.

In response, the court questioned "Mr. Timmons, is that a correct summary of your involvement in this activity," and the defendant answered, "Yes, sir." *Id*. at 55

Importantly, the factual recitation presented by the prosecutor at the guilty plea colloquy clearly indicates that the crime at issue was certainly not an "attempt," but rather was a substantive violation. The factual recitation presented by the government indicated that the defendant, along with other co-defendants, made contact with Terrell Harley, physically restrained him while holding him at gun point, and demanded that he give up certain money and drugs. When Harley refused to give up the money and drugs, the defendant actually shot Harley "in the gut" resulting in life-threatening injuries such that Mr. Harley had to be transported to Greenville Memorial Hospital to receive treatment.

In short, the guilty plea colloquy clearly indicates that the defendant did not merely plead to attempted Hobbs Act robbery, but rather the substantive act of committing Hobbs Act robbery. Additionally, the PSR on page 1 lists the offense as "Hobbs Act robbery" not "attempted Hobbs Act robbery."

II. *Review Under McCoy*

The case of *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) authorizes this court to take into consideration intervening changes in sentencing law, even those declared to be non-retroactive, in a compassionate release request. In *McCoy*, the Fourth Circuit Court of Appeals authorized district courts to exercise their discretion to reduce a defendant's sentence when certain compelling factors are present. In *McCoy*, the defendants were all at young age at the time of the commission of their offenses; they all had minor criminal records; and they received severe terms of incarceration pursuant to the then-applicable "stacking" regime of imposing sentences in § 924(g) convictions.

But simply saying that *McCoy* authorizes this court to reduce the defendant's sentence does not necessarily mean that this court is required to do so. In *McCoy*, the Fourth Circuit stressed several important factors that are not present in this case. As noted above, the defendants in *McCoy* were all teenagers or in their early 20s. Here, the defendant was at least 30 years of age at the time of the commission of the crime.

The defendants in *McCoy* had virtually no criminal record. Here, the defendant's criminal record includes numerous crimes set out in the PSR. The defendant's criminal history score was 6, resulting in a criminal history category of III.

On this record, the court determines that the defendant has not demonstrated an extraordinary and compelling reason for compassionate release in terms of the sentencing law change that he relies on. The facts of this case are markedly different from those in

11

*McCoy*.

As this court finds no extraordinary and compelling reason to support his release, it is not necessary for the court to address the § 3553(a) factors.

### III. *Post Sentencing Conduct*

Regarding the defendant's professional development while incarcerated, it is true that he has taken a significant number of vocational and educational courses. Some of these courses, such as plumbing apprenticeship, real estate investing, leadership, leadership development, all seem to have some rehabilitative value. Other courses include as the music industry, psychological self study, and psychology . In any event, at noted previously, the defendant's rehabilitation standing alone does not justify compassionate release.

### CONCLUSION

For the foregoing reason, this court determines that the defendant has not shown an extraordinary and compelling reason for his immediate release, even after a review under *McCoy*.

The defendant's motion (ECF No. 3564) is respectfully denied.

IT IS SO ORDERED.

August 1, 2023  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge